FILED

MAR 19 2026

CLERK U.S. BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
BY:                    Deputy Clerk

ELENA VON NEITSCH
6744 Mulholland Drive
Los Angeles, CA 90068
310-595-0899
elenanejic@gmail.com
*Plaintiff/Debtor Pro Se*

**UNITED STATES BANKRUPTCY COURT**

**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

**LOS ANGELES DIVISION**

| | |
|---|---|
| *In re:* | Case No.: 2:25-bk-11999-DS |
| ALEXANDER VON NEITSCH, ELENA VON NEITSCH, *Debtors.* | Chapter : 7 |
| | **Adv. No.:** _____ |
| ELENA VON NEITSCH, *Plaintiff,* v. DANIEL E. NAYSAN, D.D.S.; and M. NAYSSAN, D.D.S., INC., a California Dental Corporation, dba BEDFORD DENTAL GROUP, *Defendants* | **COMPLAINT FOR DAMAGES FOR VIOLATION OF DISCHARGE INJUNCTION, VIOLATION OF THE AUTOMATIC STAY, CIVIL CONTEMPT, AND FOR DECLARATORY RELIEF (11 U.S.C. §§ 524(a)(2), 362(k), 105(a); Fed. R. Bankr. P. 7001(f), 7001(i))** |
| | Judge:          Hon. Saltzman |

**COMPLAINT FOR DAMAGES FOR VIOLATION OF DISCHARGE**

**INJUNCTION, VIOLATION OF THE AUTOMATIC STAY,**

**CIVIL CONTEMPT, AND FOR DECLARATORY RELIEF**

(11 U.S.C. §§ 524(a)(2), 362(k), 105(a); Fed. R. Bankr. P. 7001(f), 7001(i))

ADVERSARY COMPLAINT
- 1 -

**COMPLAINT**

**I. INTRODUCTION**

1. Plaintiff Elena von Neitsch ("Plaintiff" or "Debtor") brings this adversary proceeding against Defendants Daniel E. Naysan, D.D.S. and M. Nayssan, D.D.S., Inc., a California Dental Corporation, dba Bedford Dental Group (collectively, "Defendants") for violation of the discharge injunction under 11 U.S.C. § 524(a)(2), for violation of the automatic stay under 11 U.S.C. § 362(k) (pled in the alternative), for civil contempt and injunctive relief under 11 U.S.C. § 105(a), and for declaratory relief under Federal Rules of Bankruptcy Procedure 7001(f) and 7001(i).

2. After Plaintiff received her Chapter 7 discharge on June 23, 2025, Defendants, through their counsel of record Brian P. Kamel & Associates, engaged in a sustained pattern of acts to collect, recover, or offset discharged debts as personal liabilities of the Debtor, including continued prosecution of a motion to dismiss based on a discharged CCP § 1030 bond obligation, invocation of a CCP § 998 offer to compromise predicated on discharged litigation costs, and repeated representations to the Los Angeles Superior Court that the bond obligation remained enforceable notwithstanding the discharge.

3. The Ninth Circuit Bankruptcy Appellate Panel has found that Defendants themselves previously recognized that prepetition fees and costs have been discharged. Despite this admission, Defendants continued to pursue enforcement of the very obligations they acknowledged were discharged.

4. On March 13, 2026, the Los Angeles Superior Court vacated the bond order as void under CCP § 473(d) and denied Defendants' motion to dismiss as moot. Although the Los Angeles Superior Court vacated the February 13, 2025 CCP § 1030 bond order on March 13, 2026, that ruling does not resolve the federal bankruptcy issues presented here. Before the bond was vacated, Defendants had already pursued post-discharge enforcement of the bond obligation and related cost-shifting mechanisms against Plaintiff

ADVERSARY COMPLAINT
- 2 -

personally, despite notice of the discharge injunction. This adversary proceeding seeks only to determine the effect of Plaintiff's bankruptcy discharge on those obligations, to remedy any violation of 11 U.S.C. § 524(a)(2), and to prevent any future attempt to impose discharged or dischargeable costs against Plaintiff personally. Plaintiff does not seek to stay, delay, enjoin, or otherwise interfere with the April 28, 2026 trial of the underlying Los Angeles Superior Court malpractice action, and seeks no relief affecting that court's adjudication of liability or damages.

## II. JURISDICTION AND VENUE

5. This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 1334(b) and 157(b)(2)(I) (determinations as to the dischargeability of particular debts), 157(b)(2)(A) (matters concerning the administration of the estate), and 157(b)(2)(O) (other proceedings affecting the adjustment of the debtor-creditor relationship). This is a core proceeding.

6. Venue is proper in this District pursuant to 28 U.S.C. § 1409(a) because the underlying bankruptcy case, No. 2:25-bk-11999-DS, is pending in this District.

## III. PARTIES

7. Plaintiff Elena von Neitsch is the debtor in the underlying Chapter 7 bankruptcy case, No. 2:25-bk-11999-DS. She resides in Los Angeles, California.

8. Defendant Daniel E. Naysan, D.D.S. is a dentist licensed in California and a defendant in the state court action styled Von Neitsch v. Naysan, Los Angeles Superior Court Case No. 22SMCV01853.

9. Defendant M. Nayssan, D.D.S., Inc., a California Dental Corporation, doing business as Bedford Dental Group, is a California dental corporation and a defendant in the same state court action.

10. At all relevant times, Defendants were represented by Brian P. Kamel, Esq. and Yee Lam, Esq. of Brian P. Kamel & Associates, 11340 W. Olympic Blvd., Ste. 204, Los Angeles, CA 90064, who acted as Defendants' agents in all post-discharge and post-petition conduct alleged herein.

## IV. FACTUAL ALLEGATIONS

### A. The State Court Action and Bond Order

11. In 2022, Plaintiff filed a civil action against Defendants in the Los Angeles Superior Court, Case No. 22SMCV01853, alleging dental malpractice. Plaintiff sought over $3.3 million in damages.

12. On or about November 20, 2024, Defendants filed a motion under California Code of Civil Procedure § 1030 seeking an order requiring Plaintiff to post a security bond for costs in the amount of $50,717.36.

13. On February 13, 2025, the state court granted Defendants' motion and ordered Plaintiff to post the bond within 30 days (by March 15, 2025).

### B. The Bankruptcy Filing and Discharge

14. On March 12, 2025 — three days before the bond was due — Plaintiff and her husband filed a joint Chapter 7 bankruptcy petition in this Court, Case No. 2:25-bk-11999-DS; and subsequently on March 13, 2025 obtained a Fee Waiver from Los Angeles Superior Court.

15. The CCP § 1030 bond obligation was expressly scheduled on Plaintiff's Schedule E/F as a prepetition unsecured claim.

16. On April 15, 2025, Chapter 7 Trustee Timothy Yoo filed a Report of No Distribution, certifying that the estate had been fully administered and that all scheduled claims, totaling $376,127.22, were to be "discharged without payment."

17. On June 23, 2025, the Court entered an Order of Discharge under 11 U.S.C. § 727, discharging all of Plaintiff's prepetition debts.

ADVERSARY COMPLAINT

- 4 -

## C. The § 998 Offer to Compromise

18. On March 19, 2025 — seven days after the bankruptcy petition was filed and five days after being served by this court with the bankruptcy notice, and during the automatic stay — Defendants served a statutory offer to compromise upon Debtor (without serving the Trustee) pursuant to CCP § 998, offering to waive defense costs totaling $17,217.36 (itemized as court filing fees of $1,686.00, subpoena fees of $2,087.67, jury fees of $150.00, deposition fees of $2,856.72, and expert fees of $10,436.97) in exchange for Plaintiff's dismissal of her $3.3 million malpractice action with prejudice.

19. The § 998 offer expressly warned that if not accepted and Plaintiff failed to obtain a more favorable judgment, Plaintiff would be required to pay all of Defendants' costs, including pre-offer and post-offer expert witness fees. This cost-shifting mechanism constituted a contingent claim rooted in prepetition litigation conduct.

20. The costs itemized in the § 998 offer were prepetition litigation costs of the type discharged under 11 U.S.C. § 727. See Siegel v. Fed. Home Loan Mortg. Corp., 143 F.3d 525 (9th Cir. 1998).

## D. Defendants' Admission That Prepetition Costs Are Discharged

21. In connection with the proceedings before the bankruptcy court and the Ninth Circuit Bankruptcy Appellate Panel (BAP), Defendants acknowledged that prepetition fees and costs have been discharged. The BAP's January 28, 2026 Memorandum Decision in Case No. CC-25-1109-CNS expressly found: "The Dental Group has previously recognized that any fees or costs that could be awarded for prepetition litigation of the state court claims have been discharged." BAP Memorandum at 17 (Spraker, J., concurring).

22. Despite this admission, Defendants continued to pursue enforcement of the CCP § 1030 bond — which was designed to secure an award of those same prepetition costs and attorney's fees — and the related motion to dismiss, for approximately seven months following the entry of discharge.

ADVERSARY COMPLAINT

- 5 -

**E. Defendants' Post-Discharge Conduct**

23. Despite the entry of Plaintiff's discharge on June 23, 2025, Defendants, through their counsel, engaged in a continuing pattern of acts to enforce the discharged CCP § 1030 bond obligation and related cost-shifting claims. The following acts each constitute separate violations of the discharge injunction:

24. September 10, 2025 — Opposition to Motion for Sanctions. Defendants filed an opposition referencing the bond and dismissal motion as operative proceedings, treating them as enforceable obligations without acknowledging the discharge.

25. September 10, 2025 — Opposition to Motion to Strike Expert Hewlett. Defendants filed an opposition repeatedly referencing the "1030 Bond Motion" and the expert declaration submitted in support thereof, treating the bond proceedings as valid and enforceable post-discharge.

26. September 10, 2025 — Ex Parte to Advance Hearing Dates. Defendants filed an ex parte application referencing the pending § 1030 motions as live proceedings, seeking to advance hearing dates on matters predicated on enforcement of the discharged bond.

27. October 6, 2025 — Opposition to Complex Designation. Defendants filed an opposition in which counsel represented to the state court that "the 1030 security bond issued by this Court is not a debt and was never subject to the bankruptcy court's jurisdiction and did not become part of the bankruptcy estate." This representation was made to persuade the state court to continue enforcing a discharged obligation while previously having pursued the Motion for Relief on June 12, 2025 in CACB, and directly contradicted the BAP's subsequent finding that the dischargeability question was never adjudicated by the bankruptcy court. This representation was also inconsistent with Defendants' own prior admission that prepetition fees and costs were discharged.

28. January 13, 2026 — Ex Parte to Re-Calendar Motion to Dismiss. Defendants filed an ex parte application, supported by the Declaration of Yee Lam, to re-set the

ADVERSARY COMPLAINT
- 6 -

hearing on the § 1030(d) motion to dismiss. In her declaration, Ms. Lam stated under penalty of perjury that "there is no bankruptcy stay in effect that applies to this case and/or would prevent the bond from being collected and/or the motion to dismiss from being heard." The declaration made no reference to the discharge injunction under § 524(a)(2), treating the bond as freely collectible nearly seven months after discharge.

29. January 27, 2026 — Notice of Ruling. Defendants filed a Notice of Ruling confirming that the state court had granted their ex parte to re-set the motion to dismiss for hearing on February 26, 2026, further prosecuting enforcement of the discharged bond obligation.

**F. Plaintiff's Efforts to Provide Notice of the Discharge Injunction**

30. At all relevant times, Defendants and their counsel had actual knowledge of Plaintiff's bankruptcy filing and discharge. Defendants were served with the bankruptcy petition and the Notice of Bankruptcy in the state court action and the subsequent discharge.

31. On May 11, 2025, Plaintiff served a formal meet-and-confer letter on Defendants' counsel advising that all cost-shifting claims were barred by the discharge injunction, citing 11 U.S.C. § 524(a)(2), Siegel v. Fed. Home Loan Mortg. Corp., 143 F.3d 525 (9th Cir. 1998), In re Zilog, Inc., 450 F.3d 996 (9th Cir. 2006), and In re Gurrola, 328 B.R. 158 (9th Cir. BAP 2005).

32. On January 12, 2026, Plaintiff emailed Defendants' counsel objecting to the re-calendaring of the dismissal motion and forwarded the correspondence to Defendants' insurer, TDIC, putting all parties on notice that continued prosecution constituted a violation of the discharge injunction.

33. Defendants' post-discharge enforcement conduct was undertaken with the knowledge, participation, and/or ratification of their liability insurer and insurer-appointed counsel. Plaintiff provided written notice of the discharge injunction and of Defendants'

ADVERSARY COMPLAINT
- 7 -

continued efforts to enforce the CCP § 1030 bond obligation and related cost-shifting claims not only to defense counsel, but also to their insurer The Dentists Insurance Company (TDIC), the insurer funding and directing the defense of the state-court action as identified in verified discovery. Despite that notice, Defendants and their counsel continued to prosecute enforcement of the discharged bond obligation and to maintain in state court that the bond remained collectible against Plaintiff personally. The challenged conduct was undertaken as part of an insurer-controlled litigation strategy, making immediate injunctive relief necessary to prevent further violations of 11 U.S.C. § 524(a)(2). Defendants did not respond to or acknowledge the discharge injunction in any filing.

## G. Defendants Had No Fair Ground of Doubt

34. The bond obligation was scheduled in the bankruptcy petition. No proof of claim was filed by Defendants. No adversary proceeding was filed by Defendants to except the debt from discharge. The Trustee filed a Report of No Distribution. The discharge was entered. Plaintiff served a formal meet-and-confer letter citing specific authorities. Defendants themselves admitted that prepetition fees and costs had been discharged. Under these circumstances, there was no fair ground of doubt that the discharge injunction barred continued enforcement of the bond. Taggart v. Lorenzen, 587 U.S. 510, 521 (2019). Defendants never sought a determination of nondischargeability under 11 U.S.C. §523 with respect to the bond obligation. The state court subsequently vacated the bond as void on March 13, 2026.

35. The March 13, 2026 state court order vacating the bond as void on grounds of indigency — finding that Plaintiff's fee waiver constituted in forma pauperis status under Baltayan v. Estate of Getemyan (2001) 90 Cal.App.4th 1427 — further confirms that Defendants lacked any fair ground of doubt regarding the enforceability of the bond obligation post-discharge.

36. Defense counsel's representation to the state court that the bond "is not a debt and was never subject to the bankruptcy court's jurisdiction" (October 6, 2025 Opposition)

ADVERSARY COMPLAINT
- 8 -

was a legal determination reserved to the bankruptcy court and never adjudicated prior to this adversary proceeding, and that this Court had expressly declined to make in the June 12, 2025 stay relief proceedings. The BAP confirmed this in its January 28, 2026 Memorandum Decision, noting that the bankruptcy court "never adjudicated whether the claims for fees and costs against Ms. Von Neitsch, which were to be secured by the undertaking, were subject to discharge."

**H. Post-Petition Conduct During the Automatic Stay Period**

37. On April 2, 2025, Defendants filed a motion to dismiss the state court action under CCP § 1030(d) based on Plaintiff's failure to post the bond. This motion was filed after the bankruptcy petition date of March 12, 2025 and before the entry of the Stay Relief Order on June 12, 2025.

38. On March 19, 2025, Defendants served the CCP § 998 offer to compromise. This offer was served seven days after the bankruptcy petition was filed, five days after they received notice from the bankruptcy court of Plaintiff's bankruptcy and during the automatic stay.

39. The § 998 offer sought to leverage potential cost-shifting liability arising from prepetition litigation conduct to coerce Plaintiff, without serving the Chapter 7 Trustee, into dismissing her $3.3 million malpractice action with prejudice. The offer warned that Plaintiff would be personally liable for Defendants' litigation costs and expert fees if the offer were not accepted and Plaintiff failed to obtain a more favorable judgment. This constituted an act to collect or recover a claim against the debtor that arose before the commencement of the case, in violation of 11 U.S.C. § 362(a)(6).

40. The April 2, 2025 motion to dismiss sought to enforce the bond — which secured Defendants' contingent claim for prepetition fees and costs — and constituted an act to enforce against property of the debtor a lien securing a prepetition claim in violation of 11 U.S.C. § 362(a)(5), or alternatively an act to collect or recover a prepetition claim in violation of 11 U.S.C. § 362(a)(6).

ADVERSARY COMPLAINT

-9-

41. A Petition for Panel Rehearing was filed on January 29, 2026 in BAP Case No. CC-25-1109-CNS by Plaintiff. As of the date of this Complaint, the petition remains pending and no mandate has issued. If the BAP grants rehearing and vacates the retroactive annulment of the automatic stay, the post-petition acts identified in paragraphs 37 through 40 were taken in violation of the automatic stay and are void. See Gruntz v. Cnty. of L.A. (In re Gruntz), 202 F.3d 1074, 1082 (9th Cir. 2000).

## COUNT I

## VIOLATION OF THE DISCHARGE INJUNCTION

## (11 U.S.C. § 524(a)(2))

42. Plaintiff incorporates by reference the allegations of paragraphs 1 through 41 as though fully set forth herein.

43. Under 11 U.S.C. § 524(a)(2), the discharge operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover, or offset any discharged debt as a personal liability of the debtor.

44. The CCP § 1030 bond obligation was a prepetition debt that was discharged by the June 23, 2025 Order of Discharge. It was scheduled on Schedule E/F, no exception to discharge was sought, and the Trustee's Report of No Distribution confirmed it was to be discharged without payment. Defendants themselves admitted that prepetition fees and costs were discharged.

45. The CCP § 998 cost-shifting mechanism, to the extent it seeks to impose personal liability on the Debtor for prepetition litigation costs, likewise constitutes enforcement of a discharged debt. The costs itemized in the § 998 offer — filing fees, subpoena fees, deposition fees, jury fees, and expert fees — all arose from prepetition litigation conduct and were discharged under 11 U.S.C. § 727. Siegel, 143 F.3d at 528.

ADVERSARY COMPLAINT
- 10 -

46. Each of the post-discharge acts identified in paragraphs 23 through 29 constituted a separate act to collect, recover, or offset a discharged debt in violation of 11 U.S.C. § 524(a)(2).

47. Defendants' violations were committed with knowledge of the discharge and without any fair ground of doubt that their conduct violated the discharge injunction, satisfying the standard set forth in Taggart v. Lorenzen, 587 U.S. 510 (2019). Defendants were expressly notified of the discharge injunction in writing, received no adjudication excepting the debt from discharge, admitted that prepetition fees and costs were discharged, and affirmatively represented to the state court that the obligation was enforceable — a legal conclusion this Court never reached and the BAP confirmed was never adjudicated.

48. As a direct and proximate result of Defendants' violations, Plaintiff has suffered actual damages, including but not limited to costs incurred in opposing the post-discharge enforcement efforts in state court and before the BAP, emotional distress caused by the continuing threat of dismissal of her $3.3 million malpractice action based on a discharged obligation, and other damages to be proven at trial.

49. This Court has authority to hold Defendants in civil contempt for violation of the discharge injunction and to award actual damages, including attorneys' fees, costs, and emotional distress damages. In re Zilog, Inc., 450 F.3d 996, 1007 (9th Cir. 2006); Knupfer v. Lindblade (In re Dyer), 322 F.3d 1178, 1190–91 (9th Cir. 2003).

## COUNT II

### DECLARATORY JUDGMENT REGARDING DISCHARGEABILITY

### (Fed. R. Bankr. P. 7001(f), 7001(i))

50. Plaintiff incorporates by reference the allegations of paragraphs 1 through 49 as though fully set forth herein.

51. An actual controversy exists between Plaintiff and Defendants regarding whether the following obligations were discharged by Plaintiff's Chapter 7 discharge and are therefore subject to the permanent injunction of 11 U.S.C. § 524(a)(2):

(a) The CCP § 1030 bond obligation of $50,717.36;

(b) The prepetition litigation costs itemized in the March 19, 2025 CCP § 998 offer to compromise, totaling $17,217.36;

(c) Any cost-shifting liability triggered by the § 998 offer, including post-offer expert witness fees and other costs referenced therein; and

(d) Any postpetition fees and costs that may be sought in connection with the state court action.

52. The BAP, in its January 28, 2026 Memorandum Decision in Case No. CC-25-1109-CNS, expressly noted that the bankruptcy court "never adjudicated whether the claims for fees and costs against Ms. Von Neitsch, which were to be secured by the undertaking, were subject to discharge," and that such determination requires an adversary proceeding under Fed. R. Bankr. P. 7001(f) (dischargeability) and 7001(i) (declaratory judgment). The concurrence further noted that Defendants "previously recognized that any fees or costs that could be awarded for prepetition litigation of the state court claims have been discharged."

53. The BAP further observed that this question "may depend upon whether Ms. Von Neitsch chooses to proceed with her state court claims post-discharge" and cited Goudelock v. Sixty-01 Ass'n of Apartment Owners, 895 F.3d 633, 638 (9th Cir. 2018) and SNTL Corp. v. Ctr. Ins. Co. (In re SNTL Corp.), 571 F.3d 826, 839 (9th Cir. 2009), regarding whether postpetition costs were "fairly contemplated" prepetition. The concurrence also cited Boeing N. Am., Inc. v. Ybarra (In re Ybarra), 424 F.3d 1018, 1026 (9th Cir. 2005) and Siegel, 143 F.3d at 533, regarding the "returned to the fray" doctrine.

54. Plaintiff is proceeding with her state court claims. Jury trial is currently set for April 28, 2026. Accordingly, the question of dischargeability of costs and fees — including costs that may be sought under the § 998 offer — is ripe for adjudication.

55. Plaintiff seeks a declaratory judgment that:

(a) The CCP § 1030 bond obligation constituted a prepetition debt or claim under 11 U.S.C. § 101(5) that was discharged under 11 U.S.C. § 727;

(b) The prepetition litigation costs itemized in the § 998 offer, including filing fees, subpoena fees, deposition fees, jury fees, and expert fees, were discharged;

(c) Any cost-shifting liability under the § 998 offer, to the extent it seeks to impose personal liability on the Debtor for costs arising from prepetition litigation conduct, was discharged;

(d) To the extent Defendants assert that postpetition fees and costs are enforceable, such fees and costs were "fairly contemplated" prepetition and are likewise subject to discharge under Goudelock, 895 F.3d at 638, and SNTL Corp., 571 F.3d at 839; and

(e) Any attempt to enforce a cost award, bond obligation, or § 998 cost-shifting against Plaintiff personally is permanently barred by the discharge injunction under 11 U.S.C. § 524(a)(2).

## COUNT III

### VIOLATION OF THE AUTOMATIC STAY

### (11 U.S.C. § 362(k))

### (Pled in the Alternative)

56. Plaintiff incorporates by reference the allegations of paragraphs 1 through 55 as though fully set forth herein.

57. This Count is pled in the alternative and is contingent upon the Ninth Circuit Bankruptcy Appellate Panel granting the Petition for Panel Rehearing filed January 29,

ADVERSARY COMPLAINT
- 13 -

2026, in Case No. CC-25-1109-CNS, and vacating its January 28, 2026 Memorandum Decision affirming the retroactive annulment of the automatic stay.

58. If the retroactive annulment is vacated, the automatic stay under 11 U.S.C. § 362(a) was in effect from the date of the bankruptcy petition, March 12, 2025, until the entry of the discharge on June 23, 2025. § 362(c)(2)(C).

59. During the period the automatic stay was in effect, Defendants took the following acts in willful violation of the stay:

(a) On March 19, 2025, Defendants served a CCP § 998 offer to compromise seeking to leverage dischargeable cost obligations to coerce dismissal of Plaintiff's malpractice action, constituting an act to collect or recover a prepetition claim in violation of 11 U.S.C. § 362(a)(6);

(b) On April 2, 2025, Defendants filed a motion to dismiss under CCP § 1030(d) seeking to enforce the bond requirement, which secured Defendants' contingent claim for prepetition fees and costs, constituting an act to enforce against property of the debtor a lien securing a prepetition claim in violation of 11 U.S.C. § 362(a)(5), or alternatively an act to collect or recover a prepetition claim in violation of 11 U.S.C. § 362(a)(6).

60. Actions taken in violation of the automatic stay are void. Gruntz v. Cnty. of L.A. (In re Gruntz), 202 F.3d 1074, 1082 (9th Cir. 2000); Schwartz v. United States (In re Schwartz), 954 F.2d 569, 571 (9th Cir. 1992).

61. Defendants' violations were willful within the meaning of 11 U.S.C. § 362(k). Defendants had actual knowledge of the bankruptcy filing. The Notice of Bankruptcy was served on Defendants' counsel. The acts were deliberate and intentional, not inadvertent. A creditor's act is "willful" if the creditor knew of the stay and intentionally performed the act that violated it, regardless of whether the creditor specifically intended to violate the stay. Knupfer v. Lindblade (In re Dyer), 322 F.3d 1178, 1191 (9th Cir. 2003); In re Bertuccio, 414 B.R. 604, 611 (Bankr. N.D. Cal. 2008).

ADVERSARY COMPLAINT
- 14 -

62. As a direct and proximate result of Defendants' willful violations of the automatic stay, Plaintiff has suffered actual damages, including costs incurred in opposing the stay violations in both the state court and the bankruptcy court, emotional distress, and other damages to be proven at trial.

63. Pursuant to 11 U.S.C. § 362(k), an individual injured by a willful violation of the automatic stay shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, punitive damages.

## COUNT IV

### CIVIL CONTEMPT AND INJUNCTIVE RELIEF

### (11 U.S.C. § 105(a))

64. Plaintiff incorporates by reference the allegations of paragraphs 1 through 63 as though fully set forth herein; Defendants acted through their attorneys Brian P. Kamel and Yee Lam, whose conduct is attributable to Defendants for purposes of enforcing the discharge injunction, contempt and injunctive relief.

65. Pursuant to 11 U.S.C. § 105(a), this Court has the power to issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title, including enforcement of the discharge injunction under § 524(a)(2). The discharge injunction operates as a court order, and its violation is enforceable through civil contempt. Knupfer v. Lindblade (In re Dyer), 322 F.3d 1178, 1189–91 (9th Cir. 2003); In re Zilog, Inc., 450 F.3d 996, 1007 (9th Cir. 2006).

66. Defendants' post-discharge conduct, as set forth in paragraphs 23 through 29, was not an isolated act but a sustained pattern of violations spanning approximately seven months, continuing despite Plaintiff's written notice citing specific authorities, and despite Defendants' own admission that prepetition fees and costs were discharged.

67. Defendants' counsel affirmatively misrepresented to the Los Angeles Superior Court the legal effect of Plaintiff's bankruptcy discharge, declaring under penalty of perjury

ADVERSARY COMPLAINT
- 15 -

that "there is no bankruptcy stay in effect that applies to this case and/or would prevent the bond from being collected" without any reference to the discharge injunction, and separately representing that the bond "is not a debt and was never subject to the bankruptcy court's jurisdiction." These representations were made to the state court, on a question this Court expressly declined to adjudicate and the BAP confirmed was never adjudicated. The dischargeability of the bond obligation is a matter reserved to the bankruptcy court and had never been adjudicated prior to this adversary proceeding.

68. The compensatory contempt remedy alone is insufficient to protect Plaintiff's rights under § 524(a)(2) given the documented pattern of violations and the imminent April 28, 2026 state court trial date. Without prospective relief, Defendants may seek to invoke the CCP § 998 cost-shifting mechanism, file a memorandum of costs, or seek expert witness fees against Plaintiff personally — all of which would constitute further violations of the discharge injunction.

69. Plaintiff seeks the following relief under § 105(a):

(a) An order holding Defendants and their counsel in civil contempt for violation of the discharge injunction;

(b) An award of compensatory sanctions, including actual damages, attorneys' fees, and costs incurred in opposing post-discharge enforcement efforts;

(c) An award of coercive sanctions as the Court deems appropriate to ensure compliance with the discharge injunction in an amount sufficient to deter future violations, including daily fines for any continued acts to enforce discharged obligations.

(d) An order enjoining Defendants and their counsel from filing any memorandum of costs, cost bill, cost recovery motion, or § 998 cost-shifting request against Plaintiff personally in the state court action to the extent such costs arise from prepetition litigation conduct or discharged obligations;

ADVERSARY COMPLAINT
- 16 -

(e) An order enjoining Defendants and their counsel from representing to any court that the CCP § 1030 bond obligation or the prepetition litigation costs identified in the § 998 offer remain enforceable against Plaintiff personally; and

(f) An order requiring Defendants to file a notice in the state court action advising that court of the discharge injunction and of any orders entered by this Court in this adversary proceeding.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff expressly seeks no relief that would postpone or disturb the April 28, 2026 state-court trial, and seeks only bankruptcy-specific relief concerning personal liability for bond enforcement, costs, fees, or other discharged obligations.

Plaintiff respectfully prays that this Court:

A. On Count I, find that Defendants willfully violated the discharge injunction under 11 U.S.C. § 524(a)(2) and hold Defendants in civil contempt;

B. Award Plaintiff actual damages, including costs incurred in opposing post-discharge enforcement efforts in state court and before the BAP, emotional distress damages, and such other compensatory damages as are proven at trial;

C. On Count II, enter a declaratory judgment that the CCP § 1030 bond obligation, the prepetition litigation costs identified in the § 998 offer to compromise, and all related cost-shifting mechanisms are discharged debts under 11 U.S.C. § 727, and that their enforcement against Plaintiff personally is permanently enjoined under 11 U.S.C. § 524(a)(2);

D. On Count III, in the alternative, if the BAP vacates the retroactive annulment of the automatic stay, find that Defendants willfully violated the automatic stay under 11 U.S.C. § 362(a) and award actual damages, attorneys' fees, costs, and punitive damages pursuant to 11 U.S.C. § 362(k);

E. On Count IV, hold Defendants and their counsel in civil contempt under 11 U.S.C. § 105(a) for violation of the discharge injunction; award compensatory and coercive sanctions; and enter a prospective injunction barring further acts to enforce discharged obligations against Plaintiff personally, including cost-shifting under CCP § 998;

F. Declare void any state court actions taken in violation of the automatic stay, if the retroactive annulment is vacated;

G. Award Plaintiff such other and further relief as this Court deems just and proper.

Any injunctive relief requested herein is limited to enforcement of the discharge injunction as to Plaintiff's personal liability for costs, fees, bond enforcement, or related collection efforts, and does not extend to the trial, merits, or evidentiary proceedings in the underlying state-court action.

DATED: March 16, 2026.

Respectfully Submitted,

By

_____
Elena von Neitsch
*Plaintiff/Debtor, Pro Se*

ADVERSARY COMPLAINT
- 18 -

B1040 (FORM 1040) (12/24)

| ADVERSARY PROCEEDING COVER SHEET (Instructions on Reverse) | ADVERSARY PROCEEDING NUMBER (Court Use Only) |
|---|---|

RECEIVED

MAR 19 2026

CLERK U.S. BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
BY:_____ Deputy Clerk

| PLAINTIFFS | DEFENDANTS |
|---|---|
| Elena von Neitsch | Daniel E. Naysan DDS, M Naysan DDS Inc., et al. |

| ATTORNEYS (Firm Name, Address, and Telephone No.) | ATTORNEYS (If Known) |
|---|---|
| Elena von Neitsch, Plaintiff pro se, 6744 Mulholland Drive, Los Angeles, CA 90068 Tel. 310-595-0899 | |

| PARTY (Check One Box Only) | PARTY (Check One Box Only) |
|---|---|
| ☑ Debtor    ☐ U.S. Trustee/Bankruptcy Admin<br>☐ Creditor    ☐ Other<br>☐ Trustee | ☐ Debtor    ☐ U.S. Trustee/Bankruptcy Admin<br>☑ Creditor    ☐ Other<br>☐ Trustee |

**CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)

Violation of discharge injunction (11 U.S.C. § 524(a)(2));
Violation of automatic stay (11 U.S.C. § 362(k));
Civil contempt and injunctive relief (11 U.S.C. § 105(a));
Declaratory judgment re dischargeability (Fed. R. Bankr. P. 7001(f), 7001(i))

## NATURE OF SUIT

(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

**FRBP 7001(a) – Recovery of Money/Property**
☐ 11-Recovery of money/property - §542 turnover of property
☐ 12-Recovery of money/property - §547 preference
☐ 13-Recovery of money/property - §548 fraudulent transfer
☐ 14-Recovery of money/property - other

**FRBP 7001(b) – Validity, Priority or Extent of Lien**
☐ 21-Validity, priority or extent of lien or other interest in property

**FRBP 7001(c) – Approval of Sale of Property**
☐ 31-Approval of sale of property of estate and of a co-owner - §363(h)

**FRBP 7001(d) – Objection/Revocation of Discharge**
☐ 41-Objection / revocation of discharge - §727(c),(d),(e)

**FRBP 7001(e) – Revocation of Confirmation**
☐ 51-Revocation of confirmation

**FRBP 7001(f) – Dischargeability**
☐ 66-Dischargeability - §523(a)(1),(14),(14A) priority tax claims
☐ 62-Dischargeability - §523(a)(2), false pretenses, false representation, actual fraud
☐ 67-Dischargeability - §523(a)(4), fraud as fiduciary, embezzlement, larceny

(continued next column)

**FRBP 7001(f) – Dischargeability (continued)**
☐ 61-Dischargeability - §523(a)(5), domestic support
☐ 68-Dischargeability - §523(a)(6), willful and malicious injury
☐ 63-Dischargeability - §523(a)(8), student loan
☐ 64-Dischargeability - §523(a)(15), divorce or separation obligation (other than domestic support)
☑ 65-Dischargeability - other

**FRBP 7001(g) – Injunctive Relief**
☐ 71-Injunctive relief – imposition of stay
☑ 72-Injunctive relief – other

**FRBP 7001(h) Subordination of Claim or Interest**
☐ 81-Subordination of claim or interest

**FRBP 7001(i) Declaratory Judgment**
☑ 91-Declaratory judgment

**FRBP 7001(j) Determination of Removed Action**
☐ 01-Determination of removed claim or cause

**Other**
☐ SS-SIPA Case – 15 U.S.C. §§78aaa et.seq.
☐ 02-Other (e.g. other actions that would have been brought in state court if unrelated to bankruptcy case)

| ☐ Check if this case involves a substantive issue of state law | ☐ Check if this is asserted to be a class action under FRCP 23 |
|---|---|
| ☐ Check if a jury trial is demanded in complaint | Demand $ To be determined at trial |

Other Relief Sought

Civil contempt; compensatory and coercive sanctions; prospective injunction under 11 U.S.C. § 105(a)

**B1040 (FORM 1040) (12/24)**

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES | | | |
|---|---|---|---|
| NAME OF DEBTOR<br>Elena von Neitsch | | BANKRUPTCY CASE NO.<br>2:25-bk-11999-DS | |
| DISTRICT IN WHICH CASE IS PENDING<br>CENTRAL | | DIVISION OFFICE<br>Los Angeles | NAME OF JUDGE<br>Deborah J. Saltzman |
| RELATED ADVERSARY PROCEEDING (IF ANY) | | | |
| PLAINTIFF | DEFENDANT | | ADVERSARY<br>PROCEEDING NO. |
| DISTRICT IN WHICH ADVERSARY IS PENDING | | DIVISION OFFICE | NAME OF JUDGE |
| SIGNATURE OF ATTORNEY (OR PLAINTIFF) | | | |
| DATE<br>March 16, 2026 | | PRINT NAME OF ATTORNEY (OR PLAINTIFF)<br>Elena von Neitsch | |

## INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also complete and file Form 1040, the Adversary Proceeding Cover Sheet, unless the party files the adversary proceeding electronically through the court's Case Management/Electronic Case Filing system (CM/ECF). (CM/ECF captures the information on Form 1040 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

· The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs and Defendants.** Give the names of the plaintiffs and defendants exactly as they appear on the complaint.

**Attorneys.** Give the names and addresses of the attorneys, if known.

**Party.** Check the most appropriate box in the first column for the plaintiffs and the second column for the defendants.

**Demand.** Enter the dollar amount being demanded in the complaint.

**Signature.** This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not represented by an attorney, the plaintiff must sign.